UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD JAMAL ISOM,

       Petitioner,

v.                                              CASE NO. 14-11479
                                                HONORABLE SEAN F. COX
CARMEN DENISE PALMER,

       Respondent.

_____/

**<u>OPINION AND ORDER</u>**
**<u>DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,</u>**
**<u>DENYING A CERTIFICATE OF APPEALABILITY,</u>**
**<u>AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*</u>**

       This matter has come before the Court on a *pro se* application for the writ of habeas corpus under 28 U.S.C. § 2254.  Petitioner Donald Jamal Isom ("Petitioner") challenges his convictions for:  second-degree murder, Mich. Comp. Laws § 750.317; conspiracy to commit armed robbery, Mich. Comp. Laws § 750.157a, Mich. Comp. Laws § 750.529; attempted armed robbery, Mich. Comp. Laws § 750.92, Mich. Comp. Laws § 750.529; felon in possession of a firearm, Mich. Comp. Laws § 750.224f; carrying a concealed weapon (CCW), Mich. Comp. Laws § 750.227; and four counts of possessing a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b.  Petitioner alleges as grounds for relief allege that:  (1) the trial court erroneously denied his objections to the prosecutor's use of peremptory challenges to remove two African Americans from the venire; (2) there was insufficient evidence to convict him of conspiracy to commit armed robbery; (3) there was insufficient evidence

to convict him of murder; (4) he was denied a fair trial when a police witness and the prosecutor commented on his silence during questioning; (5) he was denied a fair trial by the improper joinder of counts; (6) re-sentencing is required because the trial court exceeded the sentencing guidelines without offering any explanation; (7) trial counsel was ineffective; (8) appellate counsel was ineffective for failing to raise a claim about trial counsel's ineffectiveness; and (9) he is entitled to an evidentiary hearing on his claims about trial and appellate counsel.

Respondent Carmen Denise Palmer ("Respondent") argues in an answer to the habeas petition that Petitioner procedurally defaulted his fourth and seventh claims and that the state courts' rejection of Petitioner's claims did not result in decisions that were contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts. The Court agrees with Respondent's assessment of Petitioner's claims. Accordingly, the habeas petition will be denied.

## I. Background

Petitioner was charged in Saginaw County, Michigan with one count of first-degree (felony) murder, one count of conspiracy to commit armed robbery, two counts of attempted robbery, one count of felon in possession of a firearm, one count of carrying a concealed weapon, and five counts of felony firearm. The charges arose from two incidents that occurred early on August 26, 2006. As explained by the Michigan Court of Appeals, the two incidents involved

> the attempted robbery of Raychan Williams and the shooting death of Darnell Eiland. The evidence at trial indicated that on the night of the crimes, defendant and Prophet Phillips were driving around with Doretha Ransom. The men went together to Williams's apartment, where Phillips tried to convince Williams to open the door by stating that he wanted to buy drugs. When Williams refused to open the door, defendant pointed a

2

gun at him.  Williams jumped away, and defendant and Phillips returned to the car.  Shortly thereafter, the three drove to another home, ostensibly to buy drugs.  Defendant and Phillips went to the house while Ransom waited in the car.  Ransom heard gunshots, and then defendant and Phillips returned to the car.  Defendant had been shot in the hand. Defendant gave Phillips a gun, and then Phillips left.  Ransom took defendant to the hospital.  While defendant was being treated, Eiland's body was found.  When the police came to the hospital to investigate defendant's gunshot wound and to determine if the Eiland death was related, defendant fled, but was apprehended shortly thereafter.

*People v. Isom*, No. 284857, 2010 WL 1404430, at *1 (Mich. Ct. App.  Apr. 8, 2010).

Defendant did not testify, and his only witness was his sister, Detrianna Barnes.

Ms. Barnes testified that Petitioner called her from the hospital at about 10:00 a.m. on

August 26, 2006, and again about 3:00 p.m. that day.  She told Petitioner to leave the

hospital because somebody was going there to kill him.

Petitioner's defense was that he

was caught in an ambush, was not the shooter or that there was enough reasonable doubt as to who was the shooter, that one Jamaar Bates, who was at the scene just prior to the shooting and who subsequently discovered the body of Mr. Eiland when he returned later that morning, was more involved in [the] killing than what he claimed, and that Williams and Bates implicated [Petitioner] in the murder because of some ongoing dislike or dispute.

*People v. Isom*, No. 07-028598 FC 4, Op. and Order Denying Post-Appellate Relief, at 2

(Saginaw Cty. Cir. Ct. July 27, 2011), ECF No. 9-20, Pg ID 1521.

On February 14, 2008, the jury found Petitioner guilty of second-degree murder,

as a lesser-included offense of first-degree murder, and the following additional

offenses:  conspiracy to commit armed robbery, one count of attempted robbery, felon

in possession of a firearm, carrying a concealed weapon, and four counts of felony

firearm.  The jury acquitted Petitioner of one count of attempted robbery and the related

felony-firearm count.  On March 20, 2008, the trial court sentenced Petitioner to two

3

years in prison for the felony-firearm convictions, followed by concurrent terms of sixty to ninety years in prison for the murder and conspiracy convictions and five to ten years in prison for the attempted-robbery, felon-in-possession, and CCW convictions.

Petitioner's initial appellate attorney filed a motion for new trial, claiming that trial counsel was ineffective for failing to request a jury instruction on self defense. Petitioner subsequently wrote to the trial court and asked the court to remove counsel from his case and strike counsel's motion for new trial. The trial court then appointed a different appellate attorney, who withdrew the motion for new trial and raised Petitioner's first six habeas claims in his appellate brief. A three-judge panel of the Michigan Court of Appeals affirmed Petitioner's convictions, *see Isom*, 2010 WL 1404430,[1] and on September 9, 2010, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Isom,* 488 Mich. 854; 787 N.W.2d 488 (2010).

Petitioner subsequently filed a motion for relief from judgment in which he raised his seventh and eighth habeas claims regarding trial and appellate counsel. He claimed that trial counsel was ineffective for failing to present a defense of self defense, for failing to request a jury instruction on self defense, and for failing to use or consult an expert witness. He also asserted that appellate counsel was ineffective for failing to raise a claim about trial counsel's ineffectiveness.

---

[1] Appellate Judge Elizabeth L. Gleicher concurred in the result reached by the majority, but wrote a separate opinion to provide an alternate analysis on Petitioner's claim about the prosecutor's use of peremptory challenges to strike African American veniremen.

The state trial court analyzed Petitioner's motion under Michigan Court Rule 6.508(D)(3) and denied the motion.[2]  Although the court opined that Petitioner would have had a reasonable chance of acquittal if trial counsel had requested a jury instruction on self defense, the court nevertheless determined that Petitioner had not shown "good cause" for failing to raise his self-defense issues on appeal, because he resisted his first appellate attorney's efforts to bring the issue before the courts.  *See Isom*, No. 07-028598 FC 4, Op. and Order Denying Post-Appellate Relief, at 3-4 (Saginaw Cty. Cir. Ct. July 27, 2011), ECF No. 9-20, Pg ID 1522-23.

Petitioner moved for reconsideration of the trial court's order on the basis that his appellate attorneys failed in their obligations and duties to assist him in bringing his self-defense claim before the Michigan Court of Appeals.  In an order denying Petitioner's motion, the trial court determined that there was insufficient evidence to support a claim of self defense and, therefore, Petitioner was not entitled to such an instruction.  The trial court concluded that appellate counsel's failure to preserve the issue for appeal was inconsequential.  *See People v. Isom*, No. 07-028598 FC 4, Op. and Order Denying Relief, at 3 (Saginaw County Cir. Ct. Apr. 2, 2012), ECF No. 9-22, Pg ID 1533.

Petitioner appealed the trial court's decision without success.  Both the Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal for failure to establish entitlement to relief under Rule 6.508(D).  *See People v. Isom*, No. 312567

---

[2]  Rule 6.508(D)(3) generally prohibits a state court from granting relief from judgment if the motion alleges non-jurisdictional grounds for relief that could have been raised on appeal.  An exception exists if the defendant demonstrates "good cause for failure to raise such grounds on appeal" and "actual prejudice from the alleged irregularities that support the claim for relief."  Mich. Ct. R. 6.508(D)(3)(a) and (b).

(Mich. Ct. App. Sept. 6, 2013); *People v. Isom*, 495 Mich. 947; 843 N.W.2d 505 (2014). On April 11, 2014, Petitioner filed his habeas corpus petition in this Court.

## II.  Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)."  *Harrington v. Richter*, 562 U.S. 86, 97 (2011).  Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id.* at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

" 'In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct,' unless rebutted by 'clear and convincing evidence'.  28 U.S.C. § 2254(e)(1)." *Holland v. Rivard*, 800 F.3d 224, 242 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 1384 (2016).  Lastly, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III.  Discussion

### A.  The Prosecutor's Use of Peremptory Challenges (claim one)

Petitioner, who is an African American, alleges that the trial court violated his right to equal protection of the law when the court denied his objections to the prosecutor's use of peremptory challenges to remove two African Americans from the venire.  According to Petitioner, the prospective jurors in question (Johnny Green and Johnnie Sewell) answered the prosecutor's questions appropriately and indicated that they could follow the trial judge's instructions on the evidence and the prosecutor's burden of proof.  Petitioner concludes that the trial court's findings – that he did not make a *prima facie* case for discrimination and that the prosecutor's explanations were adequate – were erroneous.

The Michigan Court of Appeals adjudicated Petitioner's claim on the merits on direct appeal and determined that the factual circumstances did not support Petitioner's claim of discrimination.  The Court of Appeals deferred to the trial court's resolution of credibility issues and concluded that the trial court's rulings were not clearly erroneous. Judge Gleicher wrote a concurring opinion on the issue and likewise concluded that no clear error existed.

### 1.  Clearly Established Federal Law

The clearly established federal law here is *Batson v. Kentucky*, 476 U.S. 79 (1986).  Under *Batson* "and later decisions building upon *Batson*, parties are constitutionally prohibited from exercising peremptory challenges to exclude jurors on the basis of race, ethnicity, or sex."  *Rivera v. Illinois*, 556 U.S. 148, 153 (2009).

> *Batson* provides a three-step process for a trial court to use in adjudicating a claim that a peremptory challenge was based on race:

8

> " 'First, a defendant must make a prima facie showing that a
> peremptory challenge has been exercised on the basis of
> race[; s]econd, if that showing has been made, the
> prosecution must offer a race-neutral basis for striking the
> juror in question[; and t]hird, in light of the parties'
> submissions, the trial court must determine whether the
> defendant has shown purposeful discrimination.' "

*Snyder v. Louisiana*, 552 U.S. 472, 476-77 (2008) (alterations in original) (end citations

omitted).

>        In addition to the highly deferential standard AEDPA imposes,
> *Batson* claims are also subject to highly deferential review.  The trial
> court's decision on the ultimate question of improper discriminatory intent
> is a finding of fact to be accorded "great deference."  *Hernandez v. New
> York*, 500 U.S. 352, 364–65, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)
> (plurality).  "Deference is necessary because a reviewing court, which
> analyzes only the transcripts from *voir dire*, is not as well positioned as the
> trial court is to make credibility determinations."  [*Miller-El v. Cockrell*, 537
> U.S. 322, 339 (2003)]; *see also Hernandez*, 500 U.S. at 365, 111 S.Ct.
> 1859 ("[E]valuation of the prosecutor's state of mind based on demeanor
> and credibility lies 'peculiarly within a trial judge's province.' ") quoting
> [*Wainwright v. Witt*, 469 U.S. 412,  428 (1985)].  In addition, a *Batson*
> claim "presents a mixed question of law and fact and 'necessarily focuses
> on the reasonableness of the decision of the state courts. . . .' "  *Braxton
> [v. Gansheimer*, 561 F.3d 453, 458 (6th Cr. 2009)] (quoting *Lancaster v.
> Adams*, 324 F.3d 423, 429 (6th Cir. 2003)).  The "question of 'whether a
> prosecutor intended to discriminate on the basis of race in challenging
> potential jurors is, as *Batson* recognized, a question of historical fact.' "
> *Lancaster*, 324 F.3d at 429 (quoting *Hernandez*, 500 U.S. at 367, 111
> S.Ct. 1859).  Thus, the deference given to district courts "must be modified
> in the context of a § 2254 petition to give credence to § 2254(e)(1)'s
> requirement that facts found by a state court be presumed correct unless
> the petitioner rebuts this presumption by clear and convincing evidence."
> *Braxton*, 561 F.3d at 458 (citing *Lancaster*, 324 F.3d at 429 n.1).

*Bryan v. Bobby*, 843 F.3d 1099, 1110–11 (6th Cir. 2016).

### 2.  The Facts

State appellate Judge Gleicher summarized the relevant facts as follows:

> The prosecutor exercised his second peremptory challenge to excuse
> Johnny Green, an African-American venireman.  Defendant timely raised

a *Batson* challenge at sidebar after the prosecutor peremptorily excused a second African-American juror, Johnnie Sewell.  The trial court excused the jury for the afternoon and, before defense counsel had articulated a *Batson* [challenge], the trial court announced, "Now, I would like for [the prosecutor] to state his nonracial reason so that I-."   The prosecutor interjected that the defense "hasn't made a motion.  They need to make a motion, and then I'd like some time to research the law."   The trial court adjourned to give the parties and the court an opportunity to conduct legal research.

When court reconvened the next morning, defense counsel explained as follows the basis for his *Batson* challenge:

> So in . . . his first four challenges, including six passes, two of the jurors that were excluded were black males, and it just – given the tenor of the exam during voir dire and given the challenges, it certainly created an appearance for me and a concern for me that these jurors were being excluded because they were black males and that there was nothing in the record that came up during the voir dire that would . . . cause any other reason – cause me to have any other reason to form any other belief.

The prosecutor responded that "there is no prima facie showing of a discriminatory purpose and . . . it's not a jury constituted on race at all."  The prosecutor nonetheless proceeded to relate race-neutral reasons for his exclusions of Green and Sewell.  The prosecutor claimed that Sewell seemed "confused" by the concept of circumstantial evidence, had an eleventh grade education, and "looked confused" in general during the voir dire.  According to the prosecutor, Green "had indicated quite candidly that as a 60-some-year-old black man raised in the south he had issues with the police," and also could not discern a distinction between "proof beyond a reasonable doubt and proof beyond any shadow of a doubt."

*Isom*, 2010 WL 1404430, at *6 (Gleicher, J., concurring); *see also* Trial Tr. Vol. I, at 107-17, Feb. 5, 2008), ECF No. 9-10, Pg ID 780-90; Trial Tr. Vol. II, a.m. session, at 6-28, Feb. 6, 2008), ECF No. 9-11, Pg ID 797-819.

### 3. Application of the Law

#### a. Step One

As noted above, the first step in a *Batson* analysis is determining whether a *prima facie* case has been established.

> To establish such a case, the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race.  Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate."  Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.  This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

*Batson*, 476 U.S. at 96 (internal citations omitted).

It was undisputed in this case that Petitioner was a member of a cognizable racial group and that the prosecutor exercised peremptory challenges to remove members of Petitioner's race from the venire.  (Trial Tr. Vol. II, a.m. session, at 11-12, 18, Feb. 6, 2008), ECF No. 9-11, Pg ID 802-03.  The only question was whether the relevant circumstances raised an inference that the prosecutor used a peremptory challenge to excuse a juror on the basis of race.

The prosecutor's denial of an impermissible motive did not satisfy his burden of responding to a *prima facie* case of purposeful discrimination.  *United States v. Hill*, 146 F.3d 337, 341 (6th Cir. 1998) (citing *Purkett v. Elem*, 514 U.S. 765, 769 (1995)).  Nevertheless, he explained that the victim was a black male, that every civilian witness in the case was an African American, that some of the police officers and one of the detectives were African Americans, and that the incident occurred in a predominantly

black neighborhood.   Under the circumstances, the prosecutor maintained that there would be no purpose in excluding prospective jurors simply because they were black. (Trial Tr. Vol. II, a.m. session, at 12-13, Feb. 6, 2008), ECF No. 9-11, Pg ID 803-04.

The trial court reasonably concluded from all the relevant circumstances that Petitioner had not made a *prima facie* showing that the prosecutor used a peremptory challenge to excuse a prospective juror on the basis of race.   (*Id.* at 18-19, Pg ID 809-10.)   Step one is satisfied.

### b.  Step Two

The trial court's finding that Petitioner failed to establish a *prima facie* case of discrimination should have been the end of the matter.   The prosecutor, however, requested an opportunity to make a record of the reasons for his strikes, and the trial court permitted him to proceed.  The prosecutor then explained that Mr. Sewell had only an eleventh grade education, he was confused by the notion of circumstantial evidence and how to use it, and he appeared to have a problem understanding the prosecutor's questions.  (*Id.* at 20-22, Pg ID 811-13.)

Confusion is a common race-neutral reason for striking prospective jurors. *United States v. Warren*, 788 F.3d 805, 813 (8th Cir.), *cert. denied*, 136 S. Ct. 349 (2015).  A prospective juror's lack of education or limited education also are valid race-neutral reasons for a peremptory challenge.   *See United States v. Marin*, 7 F.3d 679, 687 (7th Cir. 1993) (stating that "[a] juror's lack of education has been deemed a proper race-neutral explanation for peremptory strikes even where *all* members of the minority group appear to have been struck"); *see also Rivers v. City of Rochester*, 856 F. Supp. 2d 620, 624 (W.D. N.Y. 2012) (rejecting a *Batson* claim where the reason given for the

strike was that the prospective juror's limited education might prevent the person from understanding complex medical evidence).

Regarding Johnny Green, the prosecutor stated that Mr. Green seemed to think proof "beyond a reasonable doubt" and proof "beyond a shadow of a doubt" were the same. The prosecutor also was troubled by the fact that Mr. Green admitted to having issues with the police, and he thought that Mr. Green might not be able to relate to the victims. (Trial Tr. Vol. II, a.m. session, at 22-23, Feb. 6, 2008), ECF No. 9-11, Pg ID 813-14. Although Mr. Green had said that he could set aside his personal experiences (Trial Tr. Vol. I, at 60, Feb. 5, 2008), Pg ID 733, a negative experience with the police is an acceptable and race-neutral reason for excusing a prospective juror. *Jordan v. Lefevre*, 206 F.3d 196, 200 (2d Cir. 2000).

The prosecutor's explanations at step two of the *Batson* process did not have to be "persuasive, or even plausible," *Elem*, 514 U.S. at 767-68, and because there was no inherent discriminatory intent in his explanations, his reasons must be deemed race-neutral. *Id.* (quoting *Hernandez*, 500 U.S. at 360). Petitioner has failed to satisfy step two of the *Batson* analysis.

### c. Step Three

The Supreme Court explained in *Miller-El*, 537 U.S. at 322, that

the critical question in determining whether a prisoner has proved purposeful discrimination at step three is the persuasiveness of the prosecutor's justification for his peremptory strike. At this stage, "implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." In that instance the issue comes down to whether the trial court finds the prosecutor's race-neutral explanations to be credible. Credibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy.

*Id.* at 338-39 (quoting *Elem*, 514 U.S. at 768).

"[A] state court's finding of the absence of discriminatory intent is 'a pure issue of fact' accorded significant deference[.]" *Id.* at 339. "Deference is necessary because a reviewing court, which analyzes only the transcripts from *voir dire*, is not as well positioned as the trial court is to make credibility determinations." *Id.* "'The credibility of the prosecutor's explanation goes to the heart of the equal protection analysis, and once that has been settled, there seems nothing left to review.' " *Id.* at 340 (quoting *Hernandez*, 476 U.S. at 367); *see also Bryan*, 843 F.3d at 1110 (stating that "[t]he critical question here is 'the persuasiveness of the prosecutor's justification for his peremptory strike – quite simply, whether the trial court finds the prosecutor's race-neutral explanations credible or pretextual") (quoting *Miller-El*, 537 U.S. at 338-39).

The prosecutor's reasons for using peremptory challenges to excuse Mr. Green and Mr. Sewell do not appear to be pretextual. In fact, the trial court stated at step three of the *Batson* process that both Mr. Green and Mr. Sewell had expressed some confusion about whether they could make a decision based on the court's instructions. The court also found it "not inconsequential" that Mr. Green apparently had trouble with the police in the past. As to Mr. Sewell, the court stated that the verbal exchange with him indicated he would not want to use circumstantial evidence and would, instead, resort to his own common sensibility. For these reasons, the court denied Petitioner's *Batson* challenge, implicitly concluding that Petitioner had failed to show purposeful discrimination in the prosecutor's use of peremptory challenges. (Trial Tr. Vol. II, a.m. session, at 28, Feb. 6, 2008), ECF No. 9-11, Pg ID 819.

The trial court's factual finding – that there was no intentional discrimination – was based on a reasonable determination of the facts, which Petitioner has not rebutted with clear and convincing evidence.  Therefore, this Court must defer to the state court's ruling  on the issue of purposeful discrimination, and to the state appellate court's conclusion that no *Batson* error occurred.  Habeas relief is not warranted on Petitioner's first claim.

**B.  The Sufficiency of the Evidence** (claims two and three)

Petitioner alleges next that there was insufficient evidence to convict him of conspiracy to commit armed robbery, the related felony-firearm count, and felony murder or second-degree murder.

### 1.  Clearly Established Supreme Court Precedent

The Supreme Court has held "that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  Following *Winship,* the critical inquiry on review of a challenge to the sufficiency of the evidence supporting a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.  But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any*  rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citations and footnote omitted) (emphases in original).

15

The Supreme Court has "made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, __, 132 S. Ct. 2060, 2062 (2012) (*per curiam*). First, it is the responsibility of the trial of fact to decide what conclusions should be drawn from the evidence admitted at trial. *Id*.

> And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.' "

*Id*. (quoting *Cavazos v. Smith*, 565 U.S. 1, 3 (2011) (quoting *Lett*, 559 U.S. at 773)); *see also Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (stating that, because both *Jackson* and AEDPA applied to the petitioner's claim, the law commanded deference at two levels: deference to the trier-of-fact's verdict and deference to the state court's consideration of the trier-of-fact's verdict, as dictated by AEDPA).

### 2. Conspiracy to Commit Armed Robbery

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16. Criminal conspiracy in Michigan "is an agreement, expressed or implied, between two or more persons to commit an unlawful or criminal act." *People v. Barajas*, 198 Mich. App. 551, 553; 499 N.W.2d 396, 398 (1993).

> [D]irect proof of the conspiracy is not essential; instead, proof may be derived from the circumstances, acts, and conduct of the parties. *See, e.g., People v. Brynski*, 347 Mich. 599, 81 N.W.2d 374 (1957). Inferences may be made because such evidence sheds light on the coconspirators' intentions

*People v. Justice*, 454 Mich. 334, 347; 562 N.W.2d 652, 659 (1997) (footnote omitted).

16

The predicate offense in this case was armed robbery, the elements of which are "(1) an assault and (2) a felonious taking of property from the victim's presence or person (3) while the defendant is armed with a weapon." *People v. Smith*, 478 Mich. 292, 319; 733 N.W.2d 351, 365 (2007). "To prove conspiracy to commit armed robbery, the prosecution must prove that two or more people agreed to commit an armed robbery, with the specific intent to accomplish the robbery." *People v. Solernorona*, No. 299269, 2012 WL 1521444, at *4 (Mich. Ct. App. May 1, 2012) (unpublished). "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v. Avant*, 235 Mich. App. 499, 505; 597 N.W.2d 864, 869 (1999).

Petitioner alleges that the only evidence about what occurred at the Ninth Street house came from Doretha Ransom, who said nothing about a conspiracy between Petitioner and Phillips. Petitioner admits that there was circumstantial evidence that both he and Phillips were armed and that they fired their weapons at the house, but he contends that such evidence was no proof of a conspiracy to commit armed robbery. He asserts that, virtually all the evidence of a conspiracy and intent to rob derived from testimony about the earlier attempt to rob Williams, which was inadmissible "similar acts" evidence. Petitioner argues that the felony-firearm charge attached to the conspiracy count fails because there was insufficient evidence of a conspiracy.

The Michigan Court of Appeals disagreed with Petitioner and stated that "the record substantiate[d] the prosecutor's theory of the case that the men engaged in a conspiracy to rob local drug dealers on the night in question." *Isom*, 2010 WL 1404430, at *3. The Court of Appeals stated that Petitioner's "attempt to exclude the evidence

surrounding the attempt to rob Williams [was] without merit" and that the jury was "entitled to hear the 'complete story' surrounding the matter in issue." *Id.* (quoting *People v. Sholl*, 453 Mich. 730, 742; 556 N.W.2d 851 (1996). The Court of Appeals concluded that "[t]here was sufficient circumstantial evidence to support the conspiracy conviction." *Id.*

This Court must defer to the Michigan Court of Appeals on the issue of whether testimony about the attempt to rob Williams was admissible evidence. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (stating that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"). And the record supports the state court's conclusion that there was sufficient circumstantial evidence to support the conspiracy conviction.

Williams testified that when Phillips tried to make Williams open the door to his home and sell him some crack cocaine, Williams asked to see the money. Phillips then looked at Petitioner, who was standing nearby with a gun. Petitioner pointed the gun at Williams' face. Williams jumped away from the window and subsequently heard a gunshot. (Trial Tr. Vol. II, p.m. session, at 45-61, Feb. 6, 2008), ECF No. 9-12, Pg ID 810-14.

Doretha Ranson testified that Petitioner had a gun in his waistband when she first picked him up on the night in question. Petitioner and Phillips were talking about a watch, and they got out of the car at 4th and Federal Streets. When the men returned to the car, Petitioner said that "Ray" would have the watch the next day. Then the men talked about buying some crack cocaine, and they went to a different location. Petitioner took his gun with him, and Phillips had previously said he kept a .22 caliber

18

gun.  She subsequently heard four or five gunshots.  When the men returned to the car, Petitioner said that he got shot, and he handed his gun to Phillips, who did not get in the car.  (Trial Tr. Vol. III, at 17-50, Feb. 7, 2008), ECF No. 9-13, Pg ID 951-84.

Although Ranson admitted that Petitioner and Phillips had not discussed robbing Williams or "ripping off a drug house," (*id.* at 98, Pg ID 1032), the men could have discussed their plans in her absence.  And, as the trial court recognized,

> all the evidence points to the conclusion that defendant along with co-defendant Prophet Phillips first attempted to rob Raychan Williams at his home, firing gun shots in the attempt, and when that failed they decided to rob a nearby home where Phillips had purchased drugs in the past.  In the course of that robbery either the defendant or Phillips shot and killed Darnell Eiland.

*Isom*, No. 07-028598 FC 4, Op. and Order Denying Relief, at 2-3 (Saginaw Cty. Cir. Ct., Apr 2, 2012), ECF No. 9-22, Pg ID 1532-33.

A rational trier of fact could have concluded from the circumstantial evidence that Petitioner and Phillips agreed to rob Williams or Eiland of drugs or money and that they were armed at the time.  Therefore, the evidence was sufficient to support Petitioner's conspiracy conviction and the related felony-firearm conviction.  The state appellate court's adjudication of Petitioner's claim was neither contrary to, nor an unreasonable application of, *Jackson*.  Petitioner has no right to relief on the basis of his challenge to his conspiracy conviction and the related felony-firearm conviction.

### 3.  Felony Murder and Second-Degree Murder

Petitioner also contends that there was insufficient evidence of felony murder. According to him, there was insufficient evidence that he attempted to rob Eiland, that he fired the bullet which killed Eiland, or that he aided and abetted Phillips in killing Eiland, knowing that Phillips intended to rob or kill Eiland.  The Michigan Court of

Appeals disagreed with Petitioner and concluded that there was sufficient evidence to support the second-degree murder conviction.

Petitioner was acquitted of the felony-murder charge.  Consequently, the Court will consider only whether there was sufficient evidence to sustain Petitioner's conviction for second-degree murder.  In Michigan,

> [t]he elements of second-degree murder are: (1) a death, (2) caused by an act of  the defendant, (3) with malice, and (4) without justification or excuse. *People v. Bailey,* 451 Mich. 657, 669, 549 N.W.2d 325 (1996).
>
> Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. *People v. Aaron,* 409 Mich. 672, 728, 299 N.W.2d 304 (1980). The malice element for depraved heart murder is general mens rea.

*People v.* Goecke, 457 Mich. 442, 463–64; 579 N.W.2d 868, 878 (1998).  The prosecutor's theory was that Petitioner was guilty as the principal actor or as an aider and abettor.

> "Aiding and abetting" describes all forms of assistance rendered to the perpetrator of a crime and comprehends all words or deeds that might support, encourage, or incite the commission of a crime. . . .  To support a finding that a defendant aided and abetted a crime, the prosecutor must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.  An aider and abettor's state of mind may be inferred from all the facts and circumstances.  Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime.

*People v. Carines*, 460 Mich. 750, 757–58; 597 N.W.2d 130, 135 (1999) (quoting

*People v. Turner*, 213 Mich. App. 558, 568-69; 540 N.W.2d 728, 733-34 (1995)).

The Michigan Court of Appeals pointed out on review of Petitioner's claim that:

Williams testified that he woke up because individuals had knocked on his door in the early morning. The men purportedly came to the door to purchase drugs, but when Williams asked to see the money Phillips turned to defendant. Defendant pointed a gun at Williams, and that the gun appeared to be .40 caliber semiautomatic handgun. Williams did not open the door, jumped back, and heard the sound of a gun firing. Unable to obtain drugs or money from Williams, the two men went to another home nearby where Phillips had purchased drugs in the past. The forensic evidence established that .40 caliber bullets were found in this home and that defendant's blood was spattered on the wall of the house.

*Isom*, 2010 WL 1404430, at *4.

The Michigan Court of Appeals concluded from this evidence that Petitioner and Phillips "intended to act in obvious disregard of life-endangering consequences," and that a rational jury could have inferred from the evidence "that either [Petitioner] or Phillips fired a .40 caliber bullet that killed Eiland." *Id.* The Michigan Court of Appeals opined that "[e]ither inference, combined with the evidence that the men had attempted to rob Williams and that they were armed when they approached the house, was sufficient to support the conviction for second-degree murder." *Id.*

These conclusions were objectively reasonable and supported by the record before the Court. And because the state court's decision was not contrary to, or an unreasonable application of, *Jackson*, habeas relief is not warranted on Petitioner's challenge to his murder conviction.

## C. The Prosecutor's Comment on Petitioner's Silence (claim four)

Petitioner alleges next that he was denied a fair trial when police officers and the prosecutor commented on his silence during questioning by the police at the hospital where he was treated for his gunshot wounds. Petitioner argues that he had a right not

to incriminate himself and that the prosecutor should not have used his silence as substantive evidence of guilt.

Petitioner's claim first arose when Saginaw Police Officer Sophia Jordan testified that she attempted to speak with Petitioner in the hospital and that "he didn't really want to talk to [her]."  (Trial Tr. Vol. IV, at 85, Feb. 8, 2008), ECF No. 9-14, Pg ID 1189. Petitioner said that he did not know the answer to some of her questions, and he failed to respond to other questions.  (*Id.* at 85-86, Pg ID 1189-90.)

Lieutenant Brian Lipe testified that he went to the hospital at Officer Jordan's request to take pictures of Petitioner's gunshot wound.  When he attempted to speak with Petitioner about his condition, Petitioner's "responses were in the form of a moan or groan," and "he pretty much wouldn't talk to [Lipe] or tell [Lipe] what had happened." (*Id.* at 95, Pg ID 1199.)

Officer Addison Burton testified that, when he arrived at the hospital, Petitioner had an intravenous line in his hand.  Shortly after Officer Burton stepped outside Petitioner's room to take a phone call, he noticed Petitioner standing next to him in his hospital gown.  Petitioner mumbled something, but did not say anything about needing assistance, about being threatened, or about someone coming to get him.  (*Id.* at 121-23, Pg ID 1225-27.)

During closing arguments the prosecutor made the following comments about the officers' testimony and Petitioner's unresponsiveness:

> And he [Petitioner] goes into the hospital, and because he has a gunshot wound, the police are called.  Sophia Johnson comes to talk to him.  What happened?  Does he say I got shot at 313 North 9th because I got ambushed by drug dealers?  No.  Does he say he was minding his own business and just trying to buy a little weed and he got shot for his troubles?  No.  Does he tell Sergeant Lipe who's there to fix – or take the

> photographs?  No.  Oh sure he could have been in pain, oh sure, he could have been medicated, all right, fine.  Doesn't have any trouble talking to his sister at 10:00.  Doesn't have any trouble talking with her at 3:00.  When you hear this absurd story about why he fled from the hospital.
>
> Addison Burton came.  Does he tell Addison Burton this story?  No. What does he do?  He wants you to believe that he got a call from his sister, found out somebody was coming to the hospital to kill him.  All right, fine.  So what's the question there?  Why?  Why is somebody coming to the hospital to kill him?  More than likely, ladies and gentlemen, that never happened at all.

(Trial Tr. Vol. VI, at 98, Feb. 13, 2008), ECF No. 9-16, Pg ID 1415.  Petitioner contends that, although the officers' testimony alone may not have violated his constitutional right not to have his silence used against him, the prosecutor essentially told the jury that he had a duty to explain his injury to the officers.

## 1. Procedural Default

Respondent argues that Petitioner's claim is procedurally defaulted.   In the habeas context, a procedural default is "a critical failure to comply with state procedural law."  *Trest v. Cain*, 522 U.S. 87, 89 (1997 ).  "[A] federal court will not review the merits of [a state prisoner's] claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule."  *Martinez v. Ryan*, 566 U.S. 1, __, 132 S. Ct. 1309, 1316 (2012).

Determining whether a habeas petitioner's claim has been procedurally defaulted is a four-step inquiry:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that petitioner failed to comply with the rule. . . .  Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . .  Third, the court must decide whether the state procedural ground is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. . . .  Once

> the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Kelly v. Lazaroff*, __ F.3d __, __, No. 15-3950, 2017 WL 244069, at \*5 (6th Cir. Jan. 20, 2017) (quoting *Stone v. Moore*, 644 F.3d 342, 346 (6th Cir. 2011) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

### 2. Application

The state procedural rule in question here is Michigan's contemporaneous-objection rule, which requires defendants in criminal cases to preserve their claims for appeal by first making an objection in the trial court. *See Carines*, 460 Mich. at 764; 597 N.W.2d at 138 (holding that the "plain error" standard for reviewing unpreserved claims of non-constitutional error applies to unpreserved claims of constitutional error). Because Petitioner did not object at trial to the comments on his silence, the first procedural-default factor is satisfied.

To determine whether the state court enforced a state procedural rule, the Court "look[s] to the last reasoned state court decision" rejecting the claim. *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc). "[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989) (internal quotation marks omitted).

The Michigan Court of Appeals was the last state court to adjudicate Petitioner's claim in a reasoned opinion, and it pointed out on direct review that Petitioner "did not

24

object to the references at trial."  *Isom*, 2010 WL 1404430, at *4.  The Court of Appeals referred to Petitioner's claim as "unpreserved," and although the Court did not say that it would review the claim "for plain error," it did say that "[a] party may not harbor error as an appellate parachute," and that "a defendant may not waive objection to an issue before the trial court and raise it as an error on appeal."  *Id.*  The Court believes that these remarks constituted enforcement of the contemporaneous-objection rule.

Although the Michigan Court of Appeals also addressed the merits of Petitioner's claim,[1] this alternative holding "does not require [this Court] to disregard the state court's finding of procedural bar."  *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998).  As explained in *Harris*,

> a state court need not fear reaching the merits of a federal claim in an *alternative* holding.  By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.  See *Fox Film Corp. v. Muller*, 296 U.S. 207, 210, 56 S.Ct. 183, 184, 80 L. Ed. 158 (1935). Thus, by applying this doctrine to habeas cases, [*Wainwright v.*] *Sykes*, [433 U.S. 72 (1977)] curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision.  In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.

489 U.S. at 264 n.10 (emphasis in original).  The Court concludes that the second procedural-default factor is satisfied.

The third factor is satisfied if the state procedural rule in question is an adequate and independent state ground for denying review of a federal constitutional claim.  "The adequacy of a state procedural bar turns on whether it is firmly established and

---

[1]  The Court of Appeals stated that "[t]he Fifth Amendment does not preclude use of a defendant's pre-arrest, pre-*Miranda* silence," that "the prosecutor did not improperly comment on defendant's pre-*Miranda* silence, and that Petitioner's challenge was "not substantiated by a review of the record."  *Isom*, 2010 WL 1404430, at *4.

regularly followed; a state rule is independent if the state court actually relies on it to preclude a merits review." *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005) (citing *Abela v. Martin*, 380 F.3d 915, 921 (6th Cir. 2004)).

"Michigan's contemporaneous-objection rule is both a well-established and normally enforced procedural rule," *Taylor v. McKee*, 649 F.3d 446, 451 (6th Cir. 2011), and the Michigan Court of Appeals relied on the rule to preclude a full review of Petitioner's claim. Thus, the third factor is satisfied.

The fourth and final factor is whether Petitioner has shown "cause" for his failure to object to the claimed errors at trial and resulting prejudice. Petitioner has not advanced any argument in support of a finding of "cause and prejudice." Thus, the "cause and prejudice" argument is abandoned. *Roberts v. Carter*, 337 F.3d 609, 613 (6th Cir. 2003) (citing *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000)).

In the absence of "cause and prejudice," a habeas petitioner can proceed with a procedurally defaulted claim only if he "demonstrate[s] that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner has not produced any new evidence that was not presented at trial. Therefore, a miscarriage of justice will not occur as a result of the Court's failure to address the merits of his claim. All four procedural-default factors have been satisfied.

### 3. On the Merits

Even if Petitioner's claim were not procedurally defaulted, the Court finds for the following reasons that the claim has no merit. Petitioner relies on three Supreme Court decisions to support his claim: *Griffin v. California*, 380 U.S. 609 (1965); *Miranda v. Arizona*, 384 U.S. 436 (1966); and *Doyle v. Ohio*, 426 U.S. 610 (1976).

In *Griffin*, 380 U.S. at 615, the Supreme Court held that "the Fifth Amendment . . . in its bearing on the States by reason of the Fourteenth Amendment, forbids . . . comment by the prosecution on the accused's silence . . . ." In *Miranda*, the Supreme Court held, among other things, that:

> the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. . . . As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.

*Miranda*, 384 U.S. at 444. Finally, in *Doyle*, 426 U.S. at 619, the Supreme Court held "that the use for impeachment purposes of [a] petitioner['s] silence, at the time of arrest and after receiving *Miranda* warnings, violate[s] the Due Process Clause of the Fourteenth Amendment."

Petitioner had not been arrested and had not been advised of his constitutional rights when the police questioned him in the hospital concerning what had happened. Therefore, *Miranda* and *Doyle* do not apply here. And even though the Sixth Circuit has held that "the use of a defendant's prearrest silence as substantive evidence of guilt violates the Fifth Amendment's privilege against self-incrimination," *Combs v. Coyle*, 205 F.3d 269, 283 (6th Cir. 2000), the Supreme Court has not addressed the constitutionality of using a defendant's pre-*Miranda* silence as substantive evidence of guilt. *Jones v. Trombley*, 307 F. App'x 931, 933 (6th Cir. 2009). In fact, "the Supreme Court has expressly declined to consider 'whether or under what circumstances prearrest silence may be protected by the Fifth Amendment.' " *Bond v. McQuiggin*, 506 F. App'x 493, 498 (6th Cir. 2012) (quoting *Jenkins v. Anderson*, 447 U.S. 231, 236 n.2 (1980)).

"[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' 28 U.S.C. § 2254(d)(1). It therefore cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, 567 U.S. 37, __, 132 S. Ct. 2148, 2155 (2012); *see also Hall v. Vasbinder*, 563 F.3d 222, 232 (6th Cir. 2009) (stating that *Combs v. Coyle* was not controlling because it was decided under a pre-AEDPA, *de novo* standard of review). The Court concludes that Petitioner's claim lacks merit, in addition to being procedurally defaulted, because the state appellate court's rejection of his claim was not contrary to, or an unreasonable application of, any Supreme Court decision.

**D.  Joinder of Counts** (claim five)

Petitioner contends that he was denied a fair trial by the improper joinder of count seven (attempted robbery of Williams) and count eight (the related felony-firearm charge) with the other nine counts.  Petitioner asserts that what happened to Williams at 1111 Federal Avenue was not evidence of what happened to Eiland at 313 North 9th Street and, therefore, counts seven and eight were improperly joined with the other counts.

Petitioner's claim is based solely on Michigan Court Rule 6.120(B) (the standard for joinder of offenses), Michigan Court Rule 6.120(C) (the right to separate trials for unrelated offenses), and state-court decisions.  "A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law."  *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

> Improper joinder does not, in itself, violate the Constitution.  Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial.

*United States v. Lane*, 474 U.S. 438, 446 n.8 (1986); *see also Coley v. Bagley*, 706 F.3d 741, 753–54 (6th Cir. 2013) (citing *Lane* for the principle that "[m]isjoinder is not per se unconstitutional, but rises to that level if it results in prejudice so great as to deny a defendant his due process right to a fair trial").  "[A] risk of undue prejudice exists whenever joinder of counts permits introduction of evidence of other crimes that would otherwise be inadmissible."  *Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. 2007).

Petitioner argues that only unlawful inferences linked the incident on Federal Avenue with the incident on North 9th Street, but, as the Michigan Court of Appeals recognized,

> it was the prosecution's theory of the case that defendant and his associate, Prophet Phillips, engaged in a "mission [ ] to rob drug dealers." In the first attempt, the drug dealer refused to open the door. Within a short time and within a few blocks of the first attempt, a drug dealer was killed.

*Isom*, 2010 WL 1404430, at *5. The Court of Appeals concluded that the offenses were related and "a series of connected acts," which "occurred in accordance with defendant's plan." *Id.*

Because the two incidents were related, joining counts seven and eight with the other charges did not violate Petitioner's right to due process or a fair trial. Habeas relief is not warranted on Petitioner's fifth claim.

### E. The Sentencing Guidelines (claim six)

In his sixth claim, Petitioner asserts that the trial court improperly exceeded the sentencing guidelines for conspiracy to commit armed robbery, for attempted armed robbery, for felon in possession of a firearm, and for carrying a concealed weapon. Petitioner also alleges that the trial court relied on erroneous information in formulating his sentence and thereby violated his right to a fair sentence and due process of law.

The Michigan Court of Appeals rejected Petitioner's claim on the basis that the sentencing guidelines had to be calculated for only the most severe crime, which was second-degree murder. The Court of Appeals concluded that "there was no sentencing error." *Isom*, 2010 WL 1404430, at *5.

This Court finds no merit in Petitioner's claim because it is based on Mich. Comp. Laws § 769.34(3), which authorizes state courts to depart from sentencing guidelines only "if the court has a substantial and compelling reason for that departure and states on the record the reasons for departure."[2]  "[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  Consequently, the contention that the state court violated Michigan law fails to state a claim for which habeas corpus relief may be granted.  *Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000).

Although Petitioner contends that the trial court sentenced him on the basis of inaccurate information in violation of his constitutional right to due process of law, he has not pointed to any factual or legal errors in scoring the offense and prior-record variables which were used to calculate the sentencing guidelines.  Instead, he simply maintains that the trial court misunderstood the correct minimum sentencing range for his crimes.  Because this is not a cognizable claim on habeas review, the Court declines to grant relief on Petitioner's sentencing claim.

## F.  Trial Counsel (claim seven)

Petitioner claims that his trial attorney was ineffective for failing to defend the charges against him on a theory of self defense, for failing to request a jury instruction on self defense, and for failing to produce, or even consult, an expert witness.  Although Petitioner admits that there was no direct evidence that he acted in self defense, he

---

[2]  In 2015, the Michigan Supreme Court struck "down the requirement in MCL 769.34(3) that a sentencing court that departs from the applicable guidelines range must articulate a substantial and compelling reason for that departure."  *See People v. Lockridge*, 498 Mich. 358, 364-65; 870 N.W.2d 502, 506, *cert. denied sub nom. Michigan v. Lockridge*, 136 S. Ct. 590 (2015).

claims that the testimony at trial supported a defense of self defense.  He notes that more than one gun was fired, that he was shot multiple times in the hand, and that Eiland was shot only one time.   Petitioner also points out that, during his opening statement, defense counsel stated that Petitioner was caught in an ambush during the incident (Trial Tr. Vol. II, a.m. session, at 102, Feb. 6, 2008), ECF No. 9-11, Pg ID 893, and in his closing argument, defense counsel stated:  "[I]f he went over there with the intention to buy drugs and he's confronted with somebody inside shooting, there's no rule that says he can't defend himself . . . ."  (Trial Tr.  Vol. VI, at 132, Feb. 13, 2008), ECF No. 9-16, 1424.   Petitioner claims that, in light of these comments, defense counsel was obligated to request a jury instruction on self defense.  Finally, Petitioner claims that defense counsel should have consulted an expert witness to undermine the state's evidence that the murder was deliberate.

### 1. Procedural Default

Respondent invokes the procedural-default doctrine in response to Petitioner's claim.   The procedural rule in question is Michigan Court Rule 6.508(D)(3), which generally prohibits a state court from granting relief from judgment if the defendant's claim could have been raised on appeal from the conviction and sentence or in a prior motion.  An exception to this rule exists when the defendant demonstrates "good cause" for the failure to raise the claim on appeal or in a prior motion for relief from judgment and "actual prejudice from the alleged irregularity that supports the claim for relief." Mich. Ct. R. 6.508(D)(3)(a) and 6.508(D)(3)(b).

Petitioner violated Rule 6.508(D)(3) by failing to assert his claim about trial counsel on direct appeal from his conviction.   The last state court to issue a reasoned

decision on Petitioner's claim about trial counsel was the trial court, which clearly and expressly relied on Rule 6.508(D)(3) to deny relief. The trial court quoted the rule and then determined that, although Petitioner had satisfied the "actual prejudice" requirement of the rule, he failed to satisfy the "good cause" requirement. *See Isom*, No. 07-028598 FC 4, Op. and Order Denying Post-Appellate Relief, at 3-4 (Saginaw Cty. Cir. Ct. July 27, 2011), ECF No. 9-20, Pg ID 1522-23.

Rule 6.508(D) was an adequate and independent ground on which the state court could rely to foreclose review of Petitioner's federal claim. *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005) (citing *Simpson v. Jones*, 238 F.3d 399, 407-08 (6th Cir. 2000), and *Munson v. Kapture*, 384 F.3d 310, 315 (6th Cir. 2004)). Therefore, Petitioner's claim about trial counsel is procedurally defaulted unless he can establish "cause" for his default and resulting prejudice or that a miscarriage of justice will occur if the Court fails to adjudicate his claim.

### 2. Ineffective Assistance of Appellate Counsel as "Cause"

Petitioner blames his appellate attorney for failing to raise a claim about trial counsel on direct appeal. He claims that he informed both trial and appellate counsel that he acted in self-defense, but neither attorney advanced the theory.

Ineffective assistance of counsel that rises to the level of a Sixth Amendment violation is "cause" for a procedural default. *Carrier*, 477 U.S. at 488; *see also Jalowiec v. Bradshaw*, 657 F.3d 293, 321 (6th Cir. 2011) (stating that an appellate attorney's failure "to raise an issue on appeal can amount to constitutionally ineffective assistance"). But an indigent defendant has no right to have appointed counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). In

33

fact, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id.* at 751–52.

> Accordingly, ineffective assistance of appellate counsel claims are governed by the same *Strickland* standard as claims of ineffective assistance of trial counsel. *See Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). To prevail, [the habeas petitioner] must show that his counsel's performance was deficient and that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show prejudice, [the petitioner] must demonstrate that, but for counsel's poor performance, "there is a reasonable probability" the result of his appeal would have been different. *Id.* at 694, 104 S.Ct. 2052.

*Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010).

An exhibit to Petitioner's habeas brief consists of his second appellate attorney's letter to him on January 9, 2009. In his letter, appellate counsel states that he spoke with trial counsel about trial counsel's failure to ask for a jury instruction on self defense and that trial counsel said he chose not to ask for the instruction because he defended Petitioner's case on the basis that Petitioner was not the shooter. Trial counsel thought that he would lose credibility with the jury if he argued that Petitioner was not the shooter and even if he was the shooter, he acted in self defense. *See* Petitioner's Memorandum of Law in Support of Pet. for Writ of Habeas Corpus, App. J (correspondence from appellate counsel Bremer), ECF No. 5, Pg ID 155.

Appellate counsel accordingly chose not to raise an issue about trial counsel in his appellate brief. He maintained that the state and federal courts would find trial counsel's strategy legitimate. *Id.* Appellate counsel nevertheless gave Petitioner the option of raising the issue in a *pro se* supplemental brief. *See Isom*, No. 07-028598 FC

4, at 5 (Saginaw Cty. Cir. Ct. July 27, 2011), ECF No. 9-20, Pg ID 1524 (quoting appellate counsel's June 4, 2009 letter to Petitioner).

### a.  Trial Counsel's Failure to Pursue a Defense of Self Defense

To determine whether appellate counsel's performance was deficient, the Court looks to the underlying claim about trial counsel.  Trial counsel's decision not to request a jury instruction on self defense and not to defend the case on that basis was a legitimate strategy because a defense theory based on self defense would have contradicted Petitioner's defense that he did not shoot Darnell Eiland.  It is a permissible exercise of trial strategy not to request jury instructions on self defense when the primary line of defense is that the defendant was not the shooter.  *Tinsley v. Million*, 399 F.3d 796, 808 (6th Cir. 2005).

### b. Trial Counsel's Failure to Consult an Expert

Trial counsel's decision not to consult an expert witness also was reasonable trial strategy.  Defense counsel competently cross-examined the prosecution's expert witnesses, and even though Petitioner alleges that an expert could have shown that the murder was not deliberate, the prosecutor did not have to prove that Petitioner deliberated the murder.  For second-degree murder, it was enough to show that Petitioner  intended to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior was to cause death or great bodily harm.  *Goecke*, 457 Mich. at 464; 579 N.W.2d at 878.

Testimony that Petitioner and Phillips approached a drug house with guns and that three guns were fired at the house demonstrated that Petitioner acted in wanton and wilful disregard of the likelihood that the natural tendency of his behavior was to

cause death or great bodily harm.  Petitioner has not alleged what a defense expert witness could have said or done to rebut this evidence.  While it can be assumed in some cases that counsel was ineffective for failing to consult or rely on experts, there are

> "countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way." Rare are the situations in which the "wide latitude counsel must have in making tactical decisions" will be limited to any one technique or approach.

*Richter*, 562 U.S. at 106 (quoting *Strickland*, 466 U.S. at 689).

To summarize, trial counsel's performance was not deficient.  Therefore, appellate counsel was not ineffective for failing to raise Petitioner's claim about trial counsel on direct appeal.

> Appellate counsel cannot be found to be ineffective for "failure to raise an issue that lacks merit."  *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).  Furthermore, the *Strickland* analysis "does not require an attorney to raise every non-frivolous issue on appeal."  *Caver v. Straub*, 349 F.3d 340, 348–49 (6th Cir. 2003).

*Shaneberger*, 615 F.3d at 452.  It follows that appellate counsel was not "cause" for Petitioner's procedural default of failing to raise his claim about trial counsel on direct appeal.

### 3.  Prejudice; Miscarriage of Justice

The Court need not determine whether Petitioner has carried his burden of showing prejudice from the alleged constitutional error, because he had failed to show "cause" for his noncompliance with Michigan Court Rule 6.508(D)(3).  *Smith v. Murray*, 477 U.S. 527, 533 (1986).  Furthermore, Petitioner has not submitted any new evidence demonstrating that he is actually innocent of the crimes for which he is incarcerated and

that the Court's failure to address his claim on the merits will result in a miscarriage of justice.

All four elements of the procedural-default doctrine are satisfied. The Court therefore declines to address the substantive merits of Petitioner's claim about trial counsel.

## G. Appellate Counsel (claim eight)

Petitioner raises an independent claim about appellate attorney, stating that appellate counsel was ineffective because he did not raise a claim about trial counsel's ineffectiveness. Petitioner claims that appellate counsel misapprehended the record and failed to recognize that trial counsel asserted a defense of self defense in his opening statement and closing argument and yet failed to request a jury instruction on self defense. Petitioner also claims that appellate counsel impeded his ability to raise the issue of trial counsel's ineffectiveness in a *pro se* supplemental brief by asking Petitioner for $100.00 to cover the cost of a copy of the transcript of trial.

The last state court to address this claim was the trial court on reconsideration of its order denying Petitioner's motion for relief from judgment. The trial court stated that, although Petitioner's arguments were persuasive and tended to support his claim that appellate counsel failed to assist him in raising the self-defense issue on appeal, Petitioner was not entitled to a jury instruction on self defense, and appellate counsel's failure to preserve the issue for appeal was of no consequence. *See Isom*, No. 07-028598 FC 4, at 2-3 (Saginaw Cty. Cir. Ct. Apr. 2, 2012), ECF No. 9-22, Pg ID 1532-33.

This Court agrees with the trial court's determination that appellate counsel's performance did not prejudice Petitioner. The trial court correctly pointed out that there was

> no direct or circumstantial evidence to support a self-defense claim. There [were] no eye-witnesses to the shooting. Defendant did not testify and [thus, there was] no direct evidence of self-defense. Lastly, there is no indication of a prior altercation or acts of aggression between any of the concerned actors and the victim. To the contrary, all the evidence points to the conclusion that Defendant along with co-defendant Prophet Phillips first attempted to rob Raychan Williams at his home, firing gun shots in the attempt, and when that failed they decided to rob a nearby home where Phillips had purchased drugs in the past. In the course of that robbery either the defendant or Phillips shot and killed Darnell Eiland. The only mention of self-defense in this case either prior to or at trial is, . . . two short comments of defense counsel made during his opening and closing statements. This is hardly a sufficient basis to support giving of a self-defense instruction . . . .

*Id.* Because there was insufficient evidence to support a defense of self defense, appellate counsel was not ineffective for failing to raise the issue on appeal.

Petitioner nevertheless contends that appellate counsel impeded his ability to raise the issue in a *pro se* supplemental brief by asking him for $100.00 to cover the cost of copying the transcript. However, as the trial court pointed out in one of its orders, "defendant had access to or was already in possession of his former appellate counsel's motion for new trial [regarding trial counsel] and could have easily incorporated the arguments made therein in any filing he decided to make." *Isom*, Op. and Order Denying Post-Appellate Relief, No. 07-028598 FC 4, at 5 (Saginaw Cty. Cir. Ct. July 27, 2011), ECF No. 9-20, Pg ID 1524.

The Court concludes that appellate counsel's failure to raise a claim about trial counsel not defending the case on a theory of self defense did not constitute deficient performance, because there was insufficient evidence that Petitioner acted in self

defense.  Furthermore, appellate counsel's request for money to cover the cost of a transcript did not prejudice Petitioner, because Petitioner could have raised the issue of trial counsel's ineffectiveness without the transcript by using his first appellate attorney's brief in support of the motion for new trial.  Petitioner's claim about appellate counsel fails on the merits.

## H. Evidentiary Hearing (claim nine)

In his ninth and final claim, Petitioner alleges that he is entitled to an evidentiary hearing on his claims about trial and appellate counsel.  Petitioner claims that he received only a cursory review of his claims in state court and that an evidentiary hearing is necessary to ascertain why trial counsel did not request a jury instruction on self defense, did not present a coherent defense, and did not consult an expert witness.  Petitioner claims that an evidentiary hearing also is needed to ascertain why appellate counsel did not raise an issue about trial counsel's ineffectiveness in his appellate brief.

This is not a substantive claim, and the Court has already denied Petitioner's motion for an evidentiary hearing.  *See* Order Granting Petitioner's Motion to Amend, Denying Petitioner's Motion for Appointment of Counsel, and Denying Petitioner's Motion for an Evidentiary Hearing, ECF No. 10.  Having subsequently reviewed the record, the Court finds that an evidentiary hearing is not needed.  The Court therefore denies Petitioner's request for an evidentiary hearing.

## IV.  Conclusion

Habeas claims four and seven are procedurally defaulted, and the state courts' adjudications of the remaining claims on the merits were not contrary to Supreme Court precedent,  an  unreasonable  application  of  Supreme  Court  precedent,  or  an

unreasonable determination of the facts.  The state-court opinions clearly were not "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement."  *Richter*, 562 U.S. at 103.  The Court therefore denies the petition for writ of habeas corpus.

## V. Denying a Certificate of Appealability;
## Granting Leave to Proceed *In Forma Pauperis* on Appeal

Before Petitioner may appeal this Court's decision, a district or circuit judge must issue a certificate of appealability.  28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El,* 537 U.S. at 327.

Reasonable jurists could not disagree with the Court's resolution of Petitioner's constitutional claims, nor conclude that the issues deserve encouragement to proceed further.  The Court therefore declines to issue a certificate of appealability.  Petitioner nevertheless may proceed *in forma pauperis* on appeal if he appeals this decision because an appeal could be taken in good faith.  28 U.S.C. § 1915(a)(3).

Dated:  February 16, 2017                                  s/ Sean F. Cox
                                                           Sean F. Cox
                                                           United States District Judge


I hereby certify that on February 16, 2017, the document above was served on counsel of record via electronic means and upon Donald Isom via First Class Mail at the address

below:

Donald Isom 304048
MICHIGAN REFORMATORY
1342 WEST MAIN STREET
IONIA, MI 48846

s/Jennifer McCoy
Case Manager